| |
|---|
| **Mendez v City of New York** |
| 2025 NY Slip Op 31161(U) |
| April 8, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 150324/2020 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: __HON. RICHARD TSAI__                    PART                    21

_Justice_

-------------------------------------------------------------------------------X

RENATO MENDEZ,

                                   Plaintiff,

                    - v -

THE CITY OF NEW YORK, NEW YORK CITY TRANSIT
AUTHORITY, METROPOLITAN TRANSIT AUTHORITY,
HOST HOTELS & RESORTS, L.P., SNYT LLC,HST
LESSEE SNYT LLC, and ICON PARKING HOLDINGS, LLC,

                                 Defendants.

-------------------------------------------------------------------------------X

INDEX NO.                    150324/2020

MOTION DATE          03/15/2024,
03/15/2024,
03/15/2024

MOTION SEQ. NO.    002 003 004

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 002) 1, 9, 46, 71-87, 130-131, 136-138, 143, 163-166

were read on this motion to/for                            DISMISSAL             .

The following e-filed documents, listed by NYSCEF document numbers (Motion 003) 1, 10, 46, 88-108, 132-133, 139-140, 144, 148-154, 174-180

were read on this motion to/for                     JUDGMENT – SUMMARY       .

The following e-filed documents, listed by NYSCEF document numbers (Motion 004) 1, 12, 46, 109-129, 134-135, 141-142, 145, 155-161, 167-173

were read on this motion to/for                     JUDGMENT - SUMMARY       .

      In this action alleging a trip and fall on a dented or depressed grate, defendant City of New York (City) moves to dismiss the complaint and all cross claims for failure to state a cause of action, or in the alternative, for summary judgment dismissing the complaint and all cross claims as against it, on the grounds that the City did not receive prior written notice as required under Administrative Code § 7-201, and that the City did not cause or create the alleged condition (Motion Seq. No. 002).   Defendants New York City Transit Authority (NYCTA) and Metropolitan Transportation Authority, sued herein as Metropolitan Transit Authority (MTA) (collectively, the Transit Defendants) and plaintiff oppose the motion.

      Defendants Host Hotels & Resorts, L.P. (formerly known as Host Marriott, L.P.), SNYT, LLC (formerly known as Supernova New York Realty LLC), and HST Lessee SNYT LLC (collectively, the Host Defendants) also move for summary judgment dismissing the complaint and all cross claims as against them, on the grounds that they are not responsible for maintaining or repairing the sidewalk grate (Motion Seq. No.

[* 1]

003).  The Transit Defendants oppose the Host Defendants' motion.  The City partially opposes the Host Defendants' motion.

Defendant Icon Parking Holdings, LLC (formerly known as Citizen Holdings, LLC) (Icon Parking) also moves for summary judgment dismissing the complaint and all cross claims as against it, on the grounds that it did not lease, operate, own, or managing the parking garage abutting the location of plaintiff's alleged incident (Motion Seq. No. 004). The Transit Defendants and the City oppose Icon Parking's motion.

This decision address all three motions.

## BACKGROUND

### The Trip and Fall Incident

On October 12, 2018, at approximately 4:30 p.m., while walking on the southern sidewalk on "West 53rd Street between 6th Avenue and 7th Avenue" in Manhattan, plaintiff allegedly tripped and fell due to a depressed metal grate in the sidewalk (*see* Exhibit B in support of the City's motion [NYSCEF Doc. No. 75], complaint ¶ 27; *see also* Exhibit D in support of the City's motion [NYSCEF Doc. No. 77], bill of particulars ¶ 2).  Specifically, there was "an approximately 3/4 inch to 1 inch difference in elevation between the edge of the aforesaid metal grate located in the sidewalk, and the adjoining cement pavement surface (with the metal grate being lower)" (complaint ¶ 28).

At plaintiff's statutory hearing before the NYCTA, plaintiff testified that he tripped "where the grate meets the sidewalk. It's like the lip—the—if the—the grate was here, the sidewalk, the grate was down and I tripped on the sidewalk that—because the grate was down" (*see* Exhibit B in support of the Host Defendants' motion [NYSCEF Doc. No. 93], statutory hearing tr at 27, lines 3-14).

At plaintiff's deposition, plaintiff testified that "the lip of the sidewalk was higher than the train grate" (*see* Exhibit G in support of the City's motion [NYSCEF Doc. No. 80],  plaintiff's EBT at 15, line 22).[1] According to plaintiff, the depth was "about an inch and—an inch down.  Wide, I—I don't know what the width was" (*id.* at 51, lines 1-2).  On a photograph marked as Defendant's Exhibit B, plaintiff circled the area that was part of the grate upon which plaintiff had tripped and put his initials, RM, next to the circled area (*see* plaintiff's EBT at 31, line 15 through 32 line 2; *see also* Exhibit H in support of the City's motion [NYSCEF Doc. No. 81], photographs).[2]

---

[1] Plaintiff's deposition transcript was also submitted as Exhibit K in support of the Host Defendants' motion (NYSCEF Doc. No. 102) and as Exhibit J in support of Icon Parking's motion (NYSCEF Doc. No. 121).

[2] The photographs marked at plaintiff's deposition were also submitted as Exhibit L in support of the Host Defendants' motion (NYSCEF Doc. No. 103) and as Exhibit K in support of Icon Parking's motion (NYSCEF Doc. No. 122).

[* 2]

Ownership and Maintenance of the Grate

Frank Blandina appeared at a deposition on behalf of the Transit Defendants (*see* Exhibit P in support of the Host Defendants' motion [NYSCEF Doc. No. 107]).[3] Blandina testified that he is a Structure Maintainer employed by the NYCTA, and that since July 2015, he is a record searcher for the legal department (*id.* at 9, lines 7-18).

According to records which Blandina reviewed at the deposition, the last time that the NYCTA performed cleaning and inspection of the vents at the subject location was August 2017 (*id.* at 43, lines 19-24).

Blandina testified that a "bat" is a grouping/section of vent bays (*id.* at 17, lines 13-15; at 18, lines 9-13). A bat is separated by a concrete border at street level that goes around all sides of the vents (*id.* at 18, lines 4-5; at 58, lines 2-4; at 80, line 23 through 81, line 6), which usually does not go farther than 12 inches (*id.* at 85, lines 3-10). Metal grating covers the vent (at 84, lines 15-19). Looking at a single bat, one would see "a rectangular shape surrounded on all four sides by cement, [and] within that bat, one would see the edge of multiple bays touching up against each other to form one bat" (*id.* 19, lines 6-12).

At his deposition, Blandina insisted that "we are only responsible for the [ ]vent itself"; "we are only as liable for the vent itself"; "Everything else we lease" (*id.* at 85, lines 18-19; at 86, lines 2-3). He stated as follows:

"A. Just so to make it clear, the New York City Transit Authority does not own any -- anything. We rent or lease it from the City. The only thing that New York City Transit owns, as I mentioned, is the actual metal vent that's covering the vents. That's all we own.

Q.    The grate?

A.    Grates or the vents. Yes, whatever you want to call it, yes" (*id.* at 81, lines 9-15).

Blandina insisted that the New York City Transit Authority was not responsible for the border around the vents:

"I don't care if the border—if a—a chip on the border was three inches out or if it was thirteen inches out, it's not going to affect -- affect us because it doesn't -- we are not in control of the border" (*id.* at 85, lines 20-25).

---

[3] Blandina's deposition transcript was also submitted as Exhibit O in support of Icon Parking's motion (NYSCEF Doc. No. 126), and as Exhibit B in the City's reply in further support of its motion (NYSCEF Doc. No. 165).

**150324/2020   MENDEZ, RENATO vs. CITY OF NEW YORK**                                    **Page 3 of 11**
  **Motion No.  002 003 004**

3 of 11

Blandina was asked, "So it's your understanding, both as a record searcher and as an experienced person providing services to the Transit Authority as an employee, that the Transit Authority never maintains anything other than the metal surfaces that comprise the vent. Is that correct?" (*id.* at 76, lines 9-16). He responded, "That is correct. The Transit is only responsible for the metal grate that is above the vents and what's inside the vents. As far as outside the vents, it's -- it's open to discussion . . ." (*id.* at 78, lines 4-8).

### The Abutting Property

Thomas O'Connell testified at a deposition on behalf of the Host Defendants (*see* Exhibit M in support of Host Defendants' motion [NYSCEF Doc. No. 104], O'Connell EBT).[4] According to O'Connell, the Sheraton New York Times Square Hotel in Manhattan has frontage on West 53rd Street (*id.* at 10, lines 5-7). On the date of plaintiff's alleged incident, Host Hotel & Resorts LP was the ownership group that was connected with the hotel (*id.* at 10, lines 9-19). O'Connell testified that Marriott International managed the hotel, and that he worked for Marriott International at the time (*id.* at 10, line 24 through 11, line 13), as the director of loss prevention (*id.* at 13, lines 2-3).

As part of his responsibilities, O'Connell would do daily walks of the outside perimeter of the building (*id.* at 16, lines 10-22). O'Connell testified that he was familiar with a grate located on West 53rd Street, approximately 11 to 12 feet north of the building line, 4 to 5 feet south of the southern curb line of West 53rd, and 9-10 feet west of the 6½ Avenue walkway (*id.* at 22, lines 14-24). According to O'Connell, during his time as director of loss prevention, the hotel never maintained that grate (*id.* at 23, lines 9-14).

Plaintiff testified at his deposition, "there's a parking lot next to [the train grate]" (plaintiff's EBT, at 15, line 20). O'Connell testified that the garage provides parking for hotel guests (O'Connell EBT, at 28, lines 3-5).

Spencer Stiefel testified at a deposition on behalf of Icon Parking (*see* Exhibit O in support of Host Defendants' motion, Stiefel EBT [NYSCEF Doc. No. 106]).[5] Stiefel stated that he is the general counsel of Icon Parking (*id.* at 14, lines 2-3).

According to Stiefel, Icon Parking is a parent holding company, which does not operate, lease, or manage any parking garages (*id.* at 21, lines 6-10). Stiefel testified that the entity that operated the garage where the incident allegedly occurred is called Park-Serv LLC, which is wholly owned by another Icon Parking Holdings subsidiary (*id.* at 21, line 20 through 22 line 3), and that subsidiary itself is wholly owned by yet another entity other than Icon Parking (*id.* at 22, lines 7-10). According to Stiefel, there are

---

[4] O'Connell's deposition transcript was also submitted as Exhibit M in support of Icon Parking's Motion (NYSCEF Doc. No. 124).

[5] Stiefel's deposition transcript was also submitted as Exhibit N in support of Icon Parking's motion ([NYSCEF Doc. No. 125]).

**150324/2020 MENDEZ, RENATO vs. CITY OF NEW YORK** **Page 4 of 11**
**Motion No. 002 003 004**

4 of 11

[* 4]

about three or four entities in the chain before Icon Parking (*id.* at 22, lines 14-17). Park-Serve LLC has a written agreement with the owner of the hotel to operate the garage (*id.* at 22, lines 22-24).

## PROCEDURAL HISTORY

On January 9, 2020, plaintiff commenced this action by filing a summons and complaint (*see* NYSCEF Doc. No. 1).

On October 8, 2020, issue was joined as to the City, who asserted cross claims against all the other defendants for common-law indemnification and contribution (*see* NYSCEF Doc. No. 9). On October 14, 2020, issue was joined as to the Host Defendants, who asserted cross claims against all the other defendants for common-law indemnification and contribution as well (*see* NYSCEF Doc. No. 10). On October 21, 2020, issue was joined as to Icon Parking, who also asserted cross claims against all the other defendants for common-law indemnification and contribution (*see* NYSCEF Doc. No. 12).

Plaintiff filed the note of issue on July 27, 2023 (*see* NYSCEF Doc. No. 46).

## DISCUSSION

"On a motion for summary judgment, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. If the moving party produces the required evidence, the burden shifts to the nonmoving party to establish the existence of material issues of fact which require a trial of the action" (*Xiang Fu He v Troon Mgt., Inc.*, 34 NY3d 167, 175 [2019] [internal citations and quotation marks omitted]).

## I.     The Host Defendants' Motion for Summary Judgment (Seq. No. 003)

The Host Defendants met their prima facie burden of summary judgment dismissing the complaint as against them, based on plaintiff's deposition testimony that he tripped and fell over a depressed grate, and evidence that the grate was owned by someone else other than the Host Defendants. At his deposition, Blandina testified that "The only thing that [NYCTA] owns, as I mentioned, is the actual metal vent that's covering the vents. That's all we own." (Blandina EBT at 81, line 9-15).

34 RCNY § 2-07 (b) imposes upon the owner of a cover or grating on a street a nondelegable duty of maintenance and repair of the cover or grating, as well as the area extending 12 inches from its perimeter (*Roa v City of New York*, 188 AD3d 504 [1st Dept 2020]; *Storper v Kobe Club*, 76 AD3d 426 [1st Dept 2010]; *Hurley v Related Mgt. Co.*, 74 AD3d 648 [1st Dept 2010]). "There is nothing in Administrative Code § 7–210 to show that the City Council intended to supplant the provisions of 34 RCNY 2–07 and to allow a plaintiff to shift the statutory obligation of the [owner of the grates] to the abutting

150324/2020   MENDEZ, RENATO vs. CITY OF NEW YORK                                    Page 5 of 11
Motion No.  002 003 004

5 of 11

property owner" (*Storper*, 76 AD3d at 427).  Thus, "34 RCNY 2–07(b) provides an exception to the landowner's liability with respect to covers and their surrounding street areas" (*Jones v Vornado New York RR One L.L.C.*, 223 AD3d 467, 468 [1st Dept 2024]).

In opposition, the Transit Defendants argue that, under *Fajardo v City of New York* (197 AD3d 456, 459 [2d Dept 2021]) and *Garrett v City of New York* (222 AD3d 554, 556 [1st Dept 2023]), the City is the owner of the subway grate (affirmation of the Transit Defendants' counsel in opposition ¶ 10 [NYSCEF Doc. No. 132]).  The City does not dispute that it owns the grate at issue, but argues "the City has no maintenance responsibilities for this grate" (affirmation of the City's counsel in partial opposition ¶ 2 [NYSCEF Doc. No. 148]).

The plaintiff takes no position with respect to the Host Defendants' motion (*see* affirmation of plaintiff's counsel ¶ 4 [NYSCEF Doc. No. 137]).

Whether the NYCTA or the City is the owner of the grate is not a material issue of fact as to the liability of the Host Defendants.  Under either scenario, none of the Host Defendants would have a duty under 34 RCNY § 2-07 (b) to maintain the subway grate upon which plaintiff allegedly tripped and fell.

Therefore, the Host Defendants' motion for summary judgment is granted, and the complaint is severed and dismissed as against the Host Defendants.

Because the Host Defendants can no longer be held liable to plaintiff, the cross claims of the City, the Transit Defendants , and Icon Parking are dismissed by operation of law (*see e.g. Bendel v Ramsey Winch Co.*, 145 AD3d 500, 501 [1st Dept 2016] [in view of the dismissal of the complaint in its entirety as against a defendant, the cross claims against that defendant are also dismissed]).  The Host Defendants' own cross claims for common-law indemnification and contribution against all the other co-defendants are also dismissed as academic (*Rogers v Rockefeller Group Intl.., Inc.*, 38 AD3d 747, 750 [2d Dept 2007]).

## II.    Icon Parking's Motion for Summary Judgment (Seq. No. 004)

Icon Parking met its prima facie burden of summary judgment dismissing the complaint as against it, on the ground that it did not lease, operate, own or manage the parking garage abutting the accident location.  Stiefel testified that the entity that operated the garage where the incident allegedly occurred is called Park-Serv LLC (*id.* at 21, line 20 through 22 line 2).  According to Stiefel, there are about three or four entities in the chain before Icon Parking (*id.* at 22, lines 14-17).

Additionally, Icon Parking submitted a copy of a lease agreement made July 31, 1979 between the Hudson Sheraton Corporation and Park-Serv, Inc., the alleged predecessor-in-interest to Park-Serv LLC, to lease the premises consisting of the garage area which is part of the hotel leased and managed by the lessor as The

**150324/2020   MENDEZ, RENATO vs. CITY OF NEW YORK**                    **Page 6 of 11**
  **Motion No.  002 003 004**

6 of 11

[* 6]

Sheraton Centre Hotel, located at 7th Avenue at 52nd Street (*see* Exhibit Q in support of Icon Parking's motion [NYSCEF Doc. No. 128]). Icon Parking also submitted an amendment to the original lease, which extended the term of the lease to December 31, 2018 (*see* Exhibit R in support of Icon Parking's motion [NYSCEF Doc. No. 129]).

As an alternative ground for summary judgment, Icon Parking asserts that neither it nor Park-Serv LLC had any duty to maintain the grate because the City owned the grate, which was then leased to the NYCTA lease (*see* affirmation of Icon Parking's counsel ¶ 55 [NYSCEF Doc. No. 111]).

The plaintiff takes no position with respect to Icon Parking's motion (*see* affirmation of plaintiff's counsel ¶ 4 [NYSCEF Doc. No. 137]).

In opposition, the Transit Defendants argue that, under *Fajardo* (197 AD3d 456, *supra*) and *Garrett* (222 AD3d 554, *supra*), the City is the owner of the subway grate (affirmation of the Transit Defendants' counsel in opposition ¶ 10 [NYSCEF Doc. No. 134]). The City does not dispute that it owns the grate at issue, but argues "the City has no maintenance responsibilities for this grate" (affirmation of the City's counsel in partial opposition ¶ 2 [NYSCEF Doc. No. 155]).

Whether the NYCTA or the City is the owner of the grate is not a material issue of fact as to the liability of Icon Parking. Because it is undisputed that Icon Parking is not the lessee of the garage, it owes no duty of care to plaintiff.

Therefore, Icon Parking's motion for summary judgment is granted, and the complaint is severed and dismissed as against Icon Parking.

Because Icon Parking can no longer be held liable to plaintiff, the cross claims of the City, the Transit Defendants, and the Host Defendants against it are dismissed by operation of law (*see e.g. Bendel*, 145 AD3d at 501). Icon Parking's own cross claims for common-law indemnification and contribution against all the other co-defendants are also dismissed as academic (*Rogers*, 38 AD3d at 750).

### III. The City's Motion to Dismiss and Motion for Summary Judgment (Seq. No. 002)

The City argues that, pursuant to CPLR 3211 (a) (7), the complaint should be dismissed as against the City because plaintiff failed to plead that the City had prior written notice of the alleged defect of the grate, pursuant to Administrative Code § 7-201 (*see* affirmation of the City's counsel ¶ 19 [NYSCEF Doc. No. 73]).

As to summary judgment, the City maintains that it did not receive prior written notice of the alleged defect as required under Administrative Code § 7-201 (c). Although the City found a Big Apple Map relating to the subject location, the City contends that the map contains no relevant symbols representing any defects in the sidewalk hardware, including grates (*see* affirmation of the City's counsel ¶ 37).

150324/2020   MENDEZ, RENATO vs. CITY OF NEW YORK                          Page 7 of 11
Motion No.  002 003 004

7 of 11

[* 7]

In opposition, the Transit Defendants again argue that, under *Fajardo* (197 AD3d 456, *supra*) and *Garrett* (222 AD3d 554, *supra*), the City is the owner of the subway grate (affirmation of the Transit Defendants' counsel in opposition ¶ 10 [NYSCEF Doc. No. 130]).

In opposition, plaintiff argues that, because the City is the owner of the grate at issue, and therefore has a non-delegable duty under 34 RCNY 2-07 (b), prior written notice pursuant to Administrative Code § 7-201 is not required (affirmation of plaintiff's counsel ¶ 8 [NYSCEF Doc. No. 137]). In any event, plaintiff contends that the Big Apple Map contains several markings at the location where plaintiff alleged tripped and fell, which plaintiff highlighted for the court's convenience (*id.* ¶ 6).

As the Transit Defendants point out, in *Fajardo v City of New York*, the Appellate Division, Second Department found that, by virtue of the terms of a lease executed by the City of New York and the New York City Transit Authority, the City is the owner of subway ventilation sidewalk gratings, and therefore held that "the City, and not the Transit Authority, owed a nondelegable duty under 34 RCNY 2–07(b) to monitor the condition of the ventilation grating and the area of the sidewalk extending 12 inches outward from the perimeter of the grating" (197 AD3d at 459). Citing *Fajardo*, the Appellate Division, First Department also found that the City is the owner of the subway gratings (*Garrett v City of New York*, 222 AD3d at 556).

Notwithstanding Blandina's testimony that the NYCTA owns the metal grates that cover the vent bays at the location in this case (*see* Blandina EBT, at 81, lines 9-15), the City does not contend on its own motion that the NYCTA owns the grates. Indeed, in opposition to other motions in this case, the City does not dispute that it owns the grate at issue (affirmation of the City's counsel in partial opposition ¶ 2 [NYSCEF Doc. No. 148]; affirmation of the City's counsel in partial opposition ¶ 2 [NYSCEF Doc. No. 155]).

Assuming, for the sake of argument, that the City is the owner of the grate, plaintiff's argument that prior written notice under Administrative Code § 7-201 (c) was not required is without merit.

The Appellate Division, First Department expressly rejected such an argument in *Funkelstein v City of New York* (187 AD3d 602 [1st Dept 2020]). In *Funkelstein*, the plaintiff allegedly tripped and fell on a metal cover owned by the City of New York, which housed a pull box that was used to power pedestrian and vehicular traffic lights. The plaintiff conceded that the City did not have prior written notice of the alleged defect and did not argue that the City affirmatively caused or created the defect. Nevertheless, the plaintiff argued that no prior written notice was required because the City had a duty to repair the defective metal cover under 34 RCNY 2-07 (b).

The Appellate Division, First Department ruled, "We reject this argument. Section 7-210 [sic] of the Administrative Code of the City of New York requires plaintiff to show

150324/2020   MENDEZ, RENATO vs. CITY OF NEW YORK
Motion No.  002 003 004

Page 8 of 11

8 of 11

[* 8]

that the City received prior written notice of the alleged defect, in violation of 34 RCNY 2-07 (b)" (*id.* at 602). The Appellate Division cited *Tucker v City of New York* (84 AD3d 640, 642 [1st Dept 2011]) and its progeny.

*Tucker* addressed the issue of whether prior written notice of a defect was required under Administrative Code § 7-201 for a defect in a tree well. In reviewing the statute, the Appellate Division, First Department reasoned that the broad language of Administrative Code § 7-201 "encompassing a sidewalk and 'any encumbrances thereon or attachments thereto,' . . . requires a plaintiff to show that the City received prior written notice of the alleged tree well defect" (*Tucker*, 84 AD3d at 642).

Here, like the metal cover in *Funkelstein*, the subway grating embedded in the sidewalk is "an encumbrance thereon or attachments thereto" within the meaning of Administrative Code § 7-201 (c) (2). Thus, under *Funkelstein*, prior written notice to the City of New York of a defect of a subway grate in the sidewalk and the 12-inch perimeter is required under Administrative Code § 7-201 (c).

Because the complaint does not plead that the City had prior written notice of the alleged sidewalk defect, the complaint fails to state a valid cause of action as against the City (*see Katz v City of New York*, 87 NY2d 241, 243 [1995] ["prior written notice of a defect is a condition precedent which plaintiff is required to plead and prove to maintain an action against the City"]; *Kales v City of New York*, 169 AD3d 585 [1st Dept 2019]).

However, the analysis does not stop there. "The evidence submitted by plaintiff in opposition to the City's motion may be considered to correct the deficiency in the pleadings regarding prior written notice" (*Bchakjan v City of New York*, 210 AD3d 519, 519 [1st Dept 2022]). Like the plaintiff in *Bchakjan*, plaintiff has submitted a Big Apple Map, which indicates, in relevant part, the following markings:



**150324/2020   MENDEZ, RENATO vs. CITY OF NEW YORK**
**Motion No.  002 003 004**

Page 9 of 11

(*see* Exhibit A to affirmation of plaintiff's counsel in opposition [NYSCEF Doc. No. 142] [plaintiff highlighted symbols]).

According to the Key to Map Symbols on the Big Apple Map, several relevant symbols are discernible:



(*see id.*). However, what does not appear on the map in the area which plaintiff highlighted is this symbol:

O = Hole or hazardous depression

Because there appears to be either an "Extended section of raised or uneven sidewalk" symbol or a "Raised or uneven portion of sidewalk" symbol marked on the Big Apple Map in the area that plaintiff highlighted, the Big Apple Map is sufficient to raise a factual dispute as to whether or not the sidewalk defect which allegedly caused plaintiff to trip and fall was depicted on the Big Apple Map, thereby raising an issue of whether the City had prior written notice of the alleged defect (*Mora v City of New York*, 103 AD3d 610, 611 [2d Dept 2013]). "Factual issues as to the precise location of the defect and whether the defect is designated on the map should be resolved by a jury" (*Sanchez v City of New York*, 176 AD3d 490, 491 [1st Dept 2019]).

The complaint is therefore deemed amended to allege that the City had prior written notice (*Bchakjan*, 210 AD3d at 520), and the City's motion to dismiss and for summary judgment dismissing the complaint as against it is denied.

## CONCLUSION & ORDER

Upon the foregoing documents, it is **ORDERED** that defendant City of New York's motion to dismiss and motion for summary judgment dismissing the complaint and all cross claims against it (Motion Seq. No. 002) is **DENIED**; and it is further

150324/2020   MENDEZ, RENATO vs. CITY OF NEW YORK
Motion No.  002 003 004

Page 10 of 11

10 of 11

**ORDERED** that the motion for summary judgment by defendants Host Hotels & Resorts, L.P. (formerly known as Host Marriott, L.P.), SNYT, LLC (formerly known as Supernova New York Realty LLC), and HST Lessee SNYT LLC (Motion Seq. No. 003) is **GRANTED**, and the complaint is severed and dismissed as against these defendants, with costs and disbursements to these defendants as taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

**ORDERED** that the cross claims by and against these defendants are dismissed; and it is further

**ORDERED** that the Clerk is directed to enter judgment in these defendants' favor accordingly; and it is further

**ORDERED** that the motion for summary judgment by defendant Icon Parking Holdings, LLC (formerly known as Citizen Holdings, LLC)  (Motion Seq. No. 004) is **GRANTED**, and the complaint is severed and dismissed as against defendant Icon Parking LLC, with costs and disbursements to this defendant as taxed by the Clerk upon submission of an appropriate bill of costs; and it is further

**ORDERED** that the cross claims by and against defendant Icon Parking Holdings, LLC are dismissed; and it is further

**ORDERED** that the Clerk is directed to enter judgment in defendant Icon Parking Holdings, LLC's favor accordingly; and it is further

**ORDERED** that the remainder of the action shall continue.

20250408135937RTSAIF80D9CE6E4E744E5A8F31BAA25810EA4

**4/8/2025**
**DATE**

**RICHARD TSAI, J.S.C.**

| CHECK ONE: | | | CASE DISPOSED | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| SEQ NO. 002 | | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| SEQ NO. 003 | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| SEQ NO. 004 | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150324/2020   MENDEZ, RENATO vs. CITY OF NEW YORK**
**Motion No.  002 003 004**

Page 11 of 11

11 of 11

[* 11]